**Richard D. BENNETT and Carole A. Bennett, Plaintiffs-Appellants,**

v.

**UNITED STATES TRUST COMPANY OF NEW YORK, Defendant-Appellee.**

**No. 948, Docket 84–9036.**

United States Court of Appeals,
Second Circuit.

Argued March 20, 1985.

Decided Aug. 9, 1985.

**310**

Edward Brodsky, New York City (Richard P. Swanson, Spengler Carlson Gubar Brodsky & Frischling, New York City, of counsel), for plaintiffs-appellants.

Bernard Cedarbaum, New York City (Elizabeth Richter, Carter, Ledyard & Milburn, New York City, of counsel), for defendant-appellee.

Before MESKILL and PRATT, Circuit Judges, and PALMIERI,* District Judge.

MESKILL, Circuit Judge:

This is an appeal from a final judgment of the United States District Court for the Southern District of New York, Duffy, J., dismissing appellants' complaint for failure to state a claim upon which relief could be granted. The complaint alleges causes of action under section 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g (1982), under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) (1982), and rule 10b–5, 17 C.F.R. § 240.10b–5 (1984), under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (1982) (RICO), under N.Y.Gen.Bus.Law §§ 352–359g (part of the "Martin Act") and under the common law. The district court granted appellee's Fed.R.Civ.P. 12(b)(6) motion, ruling that no private cause of action exists under section 7 and that there was an insufficient causal connection between appellee's acts and appellants' loss for the remaining claims to state a cause of action. For the reasons that follow, we affirm.

* Honorable Edmund L. Palmieri, United States District Judge for the Southern District of New

York, sitting by designation.

BACKGROUND

This action arises out of a series of loans made between 1977 and 1981 by appellee United States Trust Company of New York (U.S. Trust) to appellants Richard D. and Carole A. Bennett (the Bennetts). The Bennetts used the loan proceeds to purchase public utility stock, depositing the stock with U.S. Trust as collateral. According to the complaint, in making these loans U.S. Trust knowingly or recklessly misrepresented to the Bennetts that the Federal Reserve's margin rules do not apply to public utility stock deposited with a bank as collateral. As a net result of these loans, even though the Bennetts had deposited $1 million in unencumbered public utility stock with U.S. Trust, their account was undermargined.

Eventually, the dividends generated by the public utility stock proved insufficient to cover the interest expenses on the loans, causing the outstanding principal and interest to increase. Concurrently, the market value of the stock decreased and in late 1981 U.S. Trust liquidated the Bennetts' account. At the time of liquidation, the outstanding principal and interest exceeded the stock's market value by $1.2 million. Thus, in addition to the loss of their $1 million in equity, the Bennetts owed U.S. Trust $1.2 million.

The Bennetts commenced this action in April 1984 seeking damages based on the decline in market value of the stock purchased with the loan proceeds and on the interest charged on the loans. The complaint alleges eight causes of action: the first two seek recovery under section 7 and the margin rules, the third seeks recovery for breach of representation, the fourth seeks recovery under section 10(b) and rule 10b–5, the fifth seeks recovery for common law fraud, the sixth seeks recovery under the Martin Act and the seventh and eighth seek recovery under RICO.

U.S. Trust moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for

failure to state a claim upon which relief could be granted. By Memorandum and Order dated November 26, 1984, the district court granted the motion. It dismissed the two claims brought under the margin rules because it determined that Congress did not intend to create a private cause of action under section 7. It dismissed the remaining claims because it believed that there was an inadequate causal relationship between U.S. Trust's acts and the Bennetts' loss.

### DISCUSSION

The Bennetts appeal the entire ruling made below, asserting that all eight causes of action state grounds for relief. We affirm the judgment of the district court.

### I. *Federal Claims*

### A. *Section 7*

The Bennetts' first two causes of action seek recovery based on U.S. Trust's violation of Regulation U. Regulation U was promulgated by the Federal Reserve pursuant to section 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g (1982). Section 221.1(a)(1) of Regulation U, as it existed at the time of the loans, provided, in pertinent part:

> [N]o bank shall extend any credit secured directly or indirectly by any margin stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral, as prescribed from time to time.

12 C.F.R. § 221.1(a)(1) (1983). According to the Bennetts, an innocent, good faith investor has a private right of action against a bank that violates Regulation U.

Neither section 7 nor Regulation U expressly provide for a private cause of action. Nevertheless, in *Pearlstein v. Scudder & German,* 429 F.2d 1136 (2d Cir. 1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971) (*Pearlstein I*), a divided panel of this Court held that a private cause of action exists for violations of section 7. Since our decision in *Pearl-*

*stein I,* however, there have been two developments that directly affect this issue. First, section 7 was amended and a new subsection f was added. Pub.L. No. 91–508, Title III, § 301(a), 84 Stat. 1114, 1124 (1970) (codified at 15 U.S.C. § 78g(f) (1982)). Prior to the enactment of subsection f it was only unlawful to extend credit in violation of the margin rules. Subsection f makes it also unlawful to accept credit in violation of those rules. We have previously recognized that the addition of subsection f "cast[s] doubt on the continued viability of the rationale" of *Pearlstein I. Pearlstein v. Scudder & German,* 527 F.2d 1141, 1145 n. 3 (2d Cir.1975) (*Pearlstein II*).

Second, in the years since *Pearlstein I* was decided, the Supreme Court has altered its method of analyzing claims of implied causes of action. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court listed four criteria that should be considered when determining if an implied cause of action exists: (1) whether "the plaintiff [is] 'one of the class for whose *especial* benefit the statute was enacted,'" (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one," (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy," and (4) whether "the cause of action [is] one traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78, 95 S.Ct. at 2088 (quoting *Texas & Pacific Ry. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)). Although early post-*Cort* decisions treated each of these four factors as independent tests, subsequent Supreme Court decisions have indicated that they should not be so treated. Thus, while these factors remain relevant, the central inquiry must be whether Congress intended to create a private cause of action. *See, e.g., Daily Income Fund v. Fox,* 464 U.S. 523, ——, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984); *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377–78, 102 S.Ct.

1825, 1838–39, 72 L.Ed.2d 182 (1982); *see also Schrachta v. Curtis*, 752 F.2d 1257, 1258–59 (7th Cir.1985).

In the wake of these two developments, district courts in this Circuit are split over whether *Pearlstein I* remains good law. *Compare Panayotopulas v. Chemical Bank*, 464 F.Supp. 199, 201–03 (S.D.N.Y. 1979) (private cause of action exists under section 7 for bank's violation of Regulation U); *Palmer v. Thomson & McKinnon Auchincloss, Inc.*, 427 F.Supp. 915, 919–22 (D.Conn.1977) (private cause of action exists under section 7 for broker's violation of Regulation T), *with Schy v. FDIC*, 465 F.Supp. 766, 770–75 (E.D.N.Y.1977) (no private cause of action exists under section 7 for bank's violation of Regulation U); *Establissement Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355, 1358–60 (S.D.N.Y.1978) (no private cause of action exists under section 7 for broker's violation of Regulation T).

There is no conflict, however, among the circuit courts that have recently considered this issue. All five that have decided the question have held that no private cause of action exists under section 7. *Bassler v. Central National Bank*, 715 F.2d 308, 310–13 (7th Cir.1983); *Walck v. American Stock Exchange*, 687 F.2d 778, 788–89 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983); *Gilman v. FDIC*, 660 F.2d 688, 691–93 (6th Cir. 1981); *Gutter v. Merrill Lynch, Pierce, Fenner & Smith*, 644 F.2d 1194, 1197–99 (6th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Stern v. Merrill Lynch, Pierce, Fenner & Smith*, 603 F.2d 1073, 1074–93 (4th Cir. 1979); *Utah State University v. Bear, Stearns & Co.*, 549 F.2d 164, 169–70 (10th Cir.), *cert. denied*, 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977).

We agree and hold that no private right of action exists under section 7. First, as the above decisions recognize, there is simply no evidence that in passing section 7 Congress intended to create a private cause of action. *Bassler*, 715 F.2d at 313 ("there is no indication of legislative intent, explicit or implicit, to create a private right of action"); *Walck*, 687 F.2d at 789 (there is "no significant evidence of congressional intent to imply a remedy in § 7;" presence of express remedies in other sections of 1934 Act raises inference that absence of express remedy under section 7 was purposeful); *Gilman*, 660 F.2d at 692 ("The language and legislative history of section 7 convince us that Congress did *not* intend to create a remedy in favor of borrowers."); *Gutter*, 644 F.2d at 1199 ("there is no indication of Congressional intent to create a [private] cause of action ..., and the enactment of Section 7(f) indicates a contrary intent"); *Stern*, 603 F.2d at 1092 ("it is not to be assumed that a statute which extends its prohibition to an investor, as this statute does as a result of Section 7(f), was intended to provide that investor with a private right of action for violation of the statute"). The absence of any indication of legislative intent to create a private cause of action under section 7 strongly suggests that Congress did not intend to create one.

Second, section 7 was clearly not passed for the "especial benefit" of individual investors. The major reason for enacting section 7 was to control the excessive use of credit in security transactions. Indeed, even the *Pearlstein I* Court recognized "that the protection of individual investors was a purpose only incidental to the protection of the overall economy from excessive speculation." 429 F.2d at 1140. While this fact standing alone would not justify a conclusion that there is no private cause of action under section 7, when coupled with the absence of any indication of legislative intent to the contrary, it certainly supports such a conclusion.

Finally, it is doubtful that allowing a private cause of action would be consistent with the "underlying purposes of the legislative scheme." As stated above, the underlying purpose of section 7 is to regulate the use of credit in securities transactions. As the addition of section 7(f) makes clear, this regulation is aimed at both lenders and investors. While allowing a private cause of action could conceivably deter violations

by lenders, it seems just as conceivable that it could encourage violations by investors seeking to shift the risk of loss. *See, e.g., Stern,* 603 F.2d at 1092–93; *Utah State,* 549 F.2d at 170; *Establissement Tomis,* 459 F.Supp. at 1360; *see also Pearlstein I,* 429 F.2d at 1148 (Friendly, *J.,* dissenting). Again, while this fact is not determinative, it supports the conclusion that Congress did not intend to create a private cause of action under section 7.

Recognizing the lack of express congressional intent to create a broad private cause of action under section 7, the Bennetts argue that a private cause of action should be inferred in those situations where the lender is culpable and the investor has acted in good faith. This argument, which is premised on the Federal Reserve's promulgation of 12 C.F.R. § 224 (1985) exempting good faith investors from criminal liability under section 7(f), has been rejected by several courts, *see, e.g., Bassler,* 715 F.2d at 311; *Stern,* 603 F.2d at 1083–84; *Utah State,* 549 F.2d at 170. We agree with their holdings. The Federal Reserve's decision to exempt good faith investors from sanctions for margin violations does not provide a basis for concluding that in enacting section 7 Congress intended to create a private cause of action in their favor.

In sum, the addition of section 7(f) and the Supreme Court's modification of its method of analyzing claims of implied causes of action require a reexamination of our *Pearlstein I* holding. Upon such a reexamination, we agree with the unanimous view of the circuit courts that have subsequently considered the issue and hold that there is no implied cause of action for violations of section 7. Therefore, the district court properly dismissed the Bennetts' first two causes of action.

### B. *Section 10(b) and Rule 10b–5*

■ The Bennetts also brought a claim under section 10(b) and rule 10b–5. They allege that U.S. Trust misrepresented that the margin rules do not apply to public utility stocks held by a bank as collateral, that this misrepresentation was made in connection with the purchase of securities and that it caused them damage. The district court dismissed this cause of action, concluding that there was no causal connection between the misrepresentation and the loss. The court stated:

> Plaintiffs' losses resulted solely from their own trading activities in the stock market. Indeed, if they had invested the funds more wisely, they could actually have increased their equity. Clearly, then, they cannot now claim that defendant's alleged fraud caused their losses. Rather, it was the Bennetts' own unwise investment choices which brought about their losses.

*Bennett v. United States Trust Co.,* No. 84 Civ. 3038, Memorandum and Order at 6 (S.D.N.Y. Nov. 26, 1984), *reprinted in* J.App. at 26, 31.

■ In order to recover under section 10(b), a plaintiff must establish that the misrepresentation complained of caused the injury suffered. To establish causation, the plaintiff must show "both *loss causation*—that the misrepresentations or omissions caused the economic harm—and *transaction causation*—that the violations in question caused the [plaintiff] to engage in the transaction in question." *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). We agree with the district court's conclusion that the Bennetts have failed to allege the requisite causation.

The Bennetts went to U.S. Trust with the idea of borrowing money to purchase public utility stock already in mind. U.S. Trust told the Bennetts that the margin rules do not apply to public utility stock pledged to a bank as collateral. The loans were then made and the public utility stock was bought. There are no allegations that U.S. Trust recommended that the Bennetts purchase public utility stock in general, that U.S. Trust recommended any particular public utility stock or that U.S. Trust misrepresented the investment value of any public utility stock. The Bennetts, and the

Bennetts alone, decided to invest in public utility stock.

The Bennetts argue, however, that if U.S. Trust had refused to make the loans, they would not have been able to purchase the stock. Thus, they claim that U.S. Trust caused the loss in question. This argument fails to distinguish between transaction causation and loss causation. The Bennetts' but-for allegations at most establish transaction causation. *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 & n. 23 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). They fail to establish the necessary loss causation; there is simply no direct or proximate relationship between the loss and the misrepresentation. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61–62 (2d Cir.1985).

The Bennetts rely heavily on our decision in *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), to support their argument that their allegations of causation are adequate. However, we believe that *Marbury* is clearly distinguishable from the case before us. In *Marbury,* a trainee at a brokerage firm misrepresented his expertise by claiming that he was a stockbroker and a "portfolio management specialist." That misrepresentation, unlike the misrepresentation in this case, induced the plaintiffs to purchase and retain specific securities despite their misgivings about the stock. Moreover, although the misrepresentation was not related to the intrinsic investment characteristics of the stock involved, it did directly relate to the investment quality of the stock because had the plaintiffs known that their "broker" was a trainee who had no expertise, they would not have accepted his recommendations. In essence, the stock in question did not have the value represented by the "broker." Thus, because the misrepresentation in *Marbury* both induced the purchase and related to the stock's value, it could be deemed causally related to the loss. In the instant case, however, the misrepresentation neither induced the purchase nor related to the stock's value.

In sum, even if the Bennetts' purchase of public utility stock and U.S. Trust's misrepresentation are sufficiently related to establish transaction causation, the Bennetts' loss and the misrepresentation are clearly not sufficiently related to establish loss causation. The loss at issue was caused by the Bennetts' own unwise investment decisions, not by U.S. Trust's misrepresentation.[1] In the absence of an adequate allegation of causation, the district court's dismissal of the section 10(b) claim was proper.

## C. *RICO*

■ In their seventh and eighth causes of action, the Bennetts seek treble damages and attorneys' fees under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (1982). The seventh cause of action is predicated on the alleged section 10(b) and rule 10b–5 violations; the eighth cause of action is predicated on an alleged mail fraud, 18 U.S.C. § 1341 (1982).

Although the Bennetts' two RICO claims do not specify the section under which they are brought, it is clear from the language of the complaint that section 1962(c) is the only relevant one. Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly

---

**1.** The Bennetts also argue that even if we hold that the misrepresentation did not cause the loss resulting from the decline in the stock's value, they should still be entitled to recover the loss resulting from the interest charges. We find this argument unconvincing. U.S. Trust is not alleged to have made any misrepresentation with respect to the loans; the Bennetts received the money that they sought, for the purpose desired, and under conditions that they understood and found agreeable. The interest expense would have been the same no matter how the Bennetts used the loan proceeds. Thus, we cannot accept the complaint's characterization of the interest expense as an element of damages.

or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

U.S. Trust argues that the complaint is deficient because it apparently casts U.S. Trust as both the "enterprise" and the "person."[2] *See, e.g., B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628, 634 (3d Cir.1984) ("a violation of section 1962(c) by a corporate entity requires an association with an enterprise that is not the same corporation"); *Haroco, Inc. v. American National Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir.1984) ("section 1962(c) requires separate entities as the liable person and the enterprise"), *aff'd on other grounds,* — U.S. —, 105 S.Ct. 3292, 87 L.Ed.2d 361 (1985) (per curiam);[3] *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984) ("If Union Bank is the enterprise, it cannot also be the RICO defendant."); *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982) (" 'enterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit"), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. Berg,* 685 F.2d 1053, 1061 (8th Cir.1982) (defendant may not be both enterprise and person associated with the enterprise), *aff'd in pertinent part in banc,* 710 F.2d 1361 (8th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Kaufman v. Chase Manhattan Bank, N.A.,* 581 F.Supp. 350, 357–58 (S.D.N.Y.1984) (complaint must distinguish the enterprise from the person); *but see United States v. Hartley,* 678 F.2d 961, 988 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) ("A corporation may be simultaneously both a defendant and the enterprise under RICO.").

As the above decisions point out, requiring a complaint to distinguish between the enterprise and the person conducting the affairs of that enterprise in the prohibited manner is supported by the plain language of section 1962(c), which clearly envisions two entities. Moreover, requiring a distinction between the enterprise and the person comports with legislative intent and policy. Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity. *See, e.g., B.F. Hirsch,* 751 F.2d at 633–34; *Haroco,* 747 F.2d at 401. Thus, we follow the majority view and hold that under section 1962(c) a corporate entity may not be simultaneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity. As the Bennetts' complaint places U.S. Trust in both roles, it was properly dismissed.

## II. *State Law Claims*

The Bennetts also assert three state law causes of action: violations of the Martin Act, breach of warranty and common law fraud. The district court found a common flaw in each of these claims, *i.e.,* a lack of causation.

As we concluded when discussing the section 10(b) and rule 10b–5 claims, the Bennetts have at most made out a claim for but-for causation. The Martin Act requires a plaintiff to show "a proximate causal connection between the alleged wrongdoing and the purported damages." *In re Investors Funding Corp. of New York Securities Litigation,* 523 F.Supp. 533, 544 (S.D.N.Y.1980); *see also Eriksson v. Galvin,* 484 F.Supp. 1108, 1128 (S.D.N.Y.1980); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112, 130

---

**2.** The complaint does not name the "person" who conducted the affairs of U.S. Trust in the proscribed manner. However, because U.S. Trust is named as the defendant, we interpret the complaint to name U.S. Trust as the section 1962(c) "person." Thus, U.S. Trust is named as both the "person" and the "enterprise."

**3.** Nothing in the Supreme Court's recent decisions in *American National Bank & Trust Co. v. Haroco, Inc.,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam), and *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), indicates that the Court considered this issue.

(S.D.N.Y.1974), *modified,* 540 F.2d 27 (2d Cir.1976). But-for causation alone is inadequate. Thus, the Martin Act claim was properly dismissed.

■ The absence of adequate causation is also fatal to a common law fraud claim under New York law. *Van Alen v. Dominick & Dominick, Inc.,* 441 F.Supp. 389, 403 (S.D.N.Y.1976), *aff'd,* 560 F.2d 547 (2d Cir.1977). To establish the required causation, the plaintiff must show that the loss was a "direct result of the defendant's wrongful actions and [that it was] independent of other causes." *Idrees v. American University of the Caribbean,* 546 F.Supp. 1342, 1350 (S.D.N.Y.1982). Again, the Bennetts' but-for allegations are insufficient to state a cause of action.

■ Finally, the Bennetts seek $2 million in damages under a breach of representation/warranty claim. However, even if U.S. Trust warranted that the margin rules do not apply to public utility stock and breached that warranty, the Bennetts would not be entitled to the damages they seek. Under New York law, breach of warranty damages are usually measured by the benefit of the bargain rule. *Clearview Concrete Products v. S. Charles Gherardi, Inc.,* 88 A.D.2d 461, 453 N.Y. S.2d 750, 756 (2d Dep't 1982). "In addition to damages which flow from the loss of the bargain, other damages which are the *natural* and *direct* result of the breach, and which were in the contemplation of the parties," may also be recovered. *Id.* at 469, 453 N.Y.S.2d at 756 (emphasis added). Damages resulting from intervening causes are thus not recoverable. *Id.* The Bennetts do not claim that their loss is recoverable under the benefit of the bargain rule. Neither is it recoverable as damage that is a "natural and direct result of the breach." The loss was directly caused by the public utility stock's poor performance, an event unrelated to the misrepresentation concerning the margin rules. Therefore, this claim was properly dismissed.[4]

---

**4.** The Bennetts did not argue below nor do they argue on appeal that they are entitled to nom-

The judgment of the district court dismissing appellants' complaint is affirmed.

---

inal damages on the breach of warranty claim. Therefore, we do not address the issue.'