Russell **THORNOCK, et al., Plaintiffs,**

v.

**KINDERHILL CORPORATION, et al., Defendants.**

Nos. **88 Civ. 3978 (RWS), 88 Civ. 6154 (RWS) to 88 Civ. 6156 (RWS), 88 Civ. 6978 (RWS), 88 Civ. 7020 (RWS) and 88 Civ. 7547 (RWS).**

United States District Court, S.D. New York.

Dec. 28, 1988.

Rosner and Goodman, New York City, for Thornock; Andrew J. Goodman, Jeffrey H. Hirsch, of counsel.

Ross & Hardies, New York City, for First City Nat. Bank; Peter I. Livingston, Michelle J. d'Arcambal, of counsel.

## OPINION

SWEET, District Judge.

The plaintiffs in this first entitled action and the defendants in the remaining six entitled actions, assigned as related cases ("the Limited Partners"), have moved pursuant to Rule 65, Fed.R.Civ.P. virtually on Christmas Eve to preclude the defendant First City National Bank & Trust Company ("First City") from selling at auction on December 30, 1988 their interests in various limited partnerships held by First City under security agreements. On the findings and conclusions set forth below, somewhat hastily, the motion is denied.

*The Parties*

The parties to the instant motion are the Limited Partners and First City. The Limited Partners are non-resident individuals, corporations or partnerships. In December 1986, they purchased limited partnership interests in Kinderhill Farm Broodmare Leasing Program ILP ("Broodmare") on the basis of private placement memoranda issued by the general partner Kinderhill Corporation, and Thomas A. Martin (collectively, "Kinderhill"). The business of the partnerships was to breed mares, raise and sell, and on occasion, race the offspring. Subsequent to the creation of the partnerships, their assets were exchanged for stock of Kinderhill Select Blood Stock, Inc. ("Kinderhill Select").

First City is a national banking association organized under the laws of the United States with its principal place of business in New York City. It is the holder of promissory notes (the "Notes") executed by the then Limited Partners in part payment for their limited partnership interests which are held as security for the notes. It is the proposed sale of those interests at auction on December 30, 1988 which has occasioned the instant motion.

*Prior Proceedings*

On October 29, 1987 certain limited partners in related actions against the Kinderhill entities filed their complaint seeking rescission of the transactions and a declaration that they are not liable on their promissory notes to First City. Kinderhill was alleged to have violated the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act, the New York Limited Partnership Act and common law principles. The complaint alleged that the private placement memoranda were false and misleading and that the conduct of the business of the partnerships and the exchange offer was fraudulent. Thereafter the limited partners sought an injunction against the prosecution of actions against the limited partners in the state courts to enforce their obligations. The motion for an injunction was granted by this court's opinion of February 8, 1988 (the "February 8 Opinion"). Additional actions were commenced involving Kinderhill limited partnerships and have been accepted as related.

The First City actions seeking to enforce the Notes were commenced in July of 1988 in the Supreme Court of the State of New York. Actions that were diverse were removed to this court and accepted as related cases to actions previously filed by Limited Partners in Kinderhill entities. The complaint in those cases was amended to add First City as an aiding and abetting defendant. Discovery has proceeded in certain of these actions on a consolidated basis.

On November 28, 1988 John Aura & Company, Inc. (the "Auctioneer") notified the Limited Partners that their interest in the Limited Partnership, held by First City as security on the promissory notes, would be sold at auction on December 30, 1988. This motion was brought by order to show cause made returnable on December 22 and was heard on that day. The Limited Partners also seek a temporary restraining order in the event that a decision is not reached prior to the proposed auction date.

*The Facts*

In 1986 First City was approached by National Capital Corporation with respect

to providing loans to the Limited Partners to finance their purchase of an interest in Broodmare. To evidence the terms of the loan, each of the Limited Partners executed and delivered to the bank Notes and collateral agreements promising to repay the Bank. Included among the agreements that each plaintiff signed was an Assignment and Security Agreement (the "Agreement") pursuant to which the Limited Partners granted the Bank a security interest in all of their right, title and interest to Broodmare in order to secure payment of their indebtedness to the Bank. Specifically, the Agreement provides that upon default, the Bank is authorized "to take any and all action which the Bank may deem necessary with respect to or otherwise deal with any of the Collateral as and completely as though the Bank were the absolute owner thereof for all purposes." The Agreement also provides that upon default, the Bank shall have the rights and remedies of a secured party under New York law, including those under the Uniform Commercial Code ("UCC"). Section 9–503 of the UCC authorizes a secured party to take possession of collateral without judicial process.[1] Section 9–504 permits the party after default to sell, lease or dispose of collateral.[2]

In connection with this transaction, each of the Limited Partners executed an agreement and release which acknowledged that they agreed to hold First City harmless and release it from any and all claims that they may have relating to or arising out of their investment. The applicable language stated:

I acknowledge and fully understand that the Bank is acting solely as a lender and not as an investment advisor. The Bank has made no attempt to analyze or evaluate my intended investment in Broodmare. The Bank has made no representations to me, expressed or implied, to induce me to request this loan. The Bank has given no opinion or advice as to whether it is wise or prudent for me to invest funds in Broodmare. The Bank has made no representations concerning Broodmare, its General Partner(s) or their financial strength, prospects or integrity. I have made my investment decision based on such independent investigation as I have deemed necessary. I understand that the Bank has not participated in the preparation of a Private Placement or Offering Memorandum or similar document for Broodmare and therefore is not responsible for any statement contained in or the completeness of any such document. I assume all responsibility for keeping myself informed of the financial condition and operations of Broodmare and agree that the Bank shall have no duty to advise me of any such information. I agree to hold the Bank harmless and do hereby release the Bank from any and all claims that I may have relating to or arising out of my investment.

The Limited Partners failed to pay the installments due under and pursuant to the Note. At present, the principal amount of the Notes is $718,000 and the amount of outstanding unpaid interest is $130,287.85.

As the end of the year draws near, First City has decided to sell its interest in the collateral in accordance with the Agreement and the UCC in order to clear its books for 1988 and reduce the indebtedness of the Limited Partners. To date it has expended $1,695.85 for advertising and auctioneers' fees.

According to counsel to the Limited Partners, First City itself is in precarious financial condition, based on a representation of its counsel in an unrelated action. First City has rebutted the charge by affidavit, asserted its financial good health and through counsel contends that its present

---

1. Section 9–503 reads in pertinent part:
   Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

2. Section 9–504 reads in pertinent part:
   (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.

action is based on a desire to exercise its rights and to clarify its accounts at year end.

It is presumed that the sale of the interest of the Limited Partners will not provide a substantial reduction of the debt of the Limited Partners but will alter the position of First City, should it bid in the interests, in the event of a Kinderhill liquidation or resolution.

The Limited Partners have not set forth any facts relating to the effect of the proposed auction on the tax status of the limited partnerships and on this record it must be assumed that no injury to the Limited Partners will be suffered in this regard.

### The Applicable Standard for Preliminary Injunctive Relief

The authorities relied on in connection with the issuance of the preliminary injunction in the February 8 opinion issued in a related case (the February 8 Opinion), familiarity with which is assumed, are equally applicable here.

The Court of Appeals for this Circuit has stated that an applicant for preliminary injunction must show:

> (a) irreparable harm and (b) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir.1987); *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

### Irreparable Injury

The Limited Partners assert that they would be irreparably injured by the sale of their limited partnership interests in Broodmare for two reasons. The first is the risk of recovering from First City the value of the interests sold in the event that the underlying transaction is rescinded. The second is the difficulty in recapturing their interests from a purchaser in the event that First City is deemed an aider and abettor and upon liquidation the interests are found to have value.

As to the precariousness of First City's financial condition, it has not been established on this record. At best the Limited Partners' future claims would be for money damages, traditionally not a basis for injunctive relief. *See, e.g., Morgan Stanley & Co. v. Archer Daniels Midland Co.*, 570 F.Supp. 1529, 1534 (S.D.N.Y.1983) (citing *Jackson Dairy*, 596 F.2d at 72).

As to the difficulty of a putative recapture of their interests, here again the Limited Partners have failed to establish irreparable injury. Indeed, it seems unlikely that the proposed auction will result in any change other than the reduction of First City's security interest to that of a legal interest.

The Limited Partners have sought comfort from and relied upon the February 8 Opinion. The issues considered in that opinion however, differed, even though the sureties which were enjoined are in a roughly equivalent position to that of First City. The issue there was the protection of a coherent resolution of the claim of the Limited Partners, rather than a determination of rights under the executed security agreements. Here, the Limited Partners have offered no defense to the proposed sale, other than their underlying and as yet unestablished claim for rescission. Thus, the issues presented here and in the February 8 Opinion are not comparable.

As is customarily stated, the absence of an adequate remedy at law is the *sine qua non* for the grant of equitable injunctive relief. *Buffalo Forge Co. v. Ampco–Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981). Where monetary damages provide adequate compensation, a preliminary injunction will not issue, "[f]or it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d at 72.

The Limited Partners here are entitled to a legal remedy for the full amount of their damages in the event they are successful on the claim. Their reliance on *Mutual Benefit Life Insurance Co. v. Atlas Fi-*

*nancial Corp.,* 454 F.2d 278 (3d Cir.1972) is also misplaced since the defendant there was in the process of liquidation and the issue was whether a certain payment by the debtor from its assets would substantially harm the other creditors.

Failure to establish irreparable injury bars the relief sought.

*Balance of Hardship*

Even if it be assumed, contrary to the conclusion stated, that under the circumstances, the possible requirement to resort to further litigation constitutes irreparable injury, the Limited Partners have yet another hurdle to overcome.

At this relatively preliminary stage of the litigation it may be assumed, simply perhaps because there are horses involved, that substantial questions have been demonstrated of fact and law going to the merits of the controversy. As this court noted in the February 8 Opinion with regard to fraud on the part of Kinderhill Corporation and Thomas A. Martin, "it would be premature at this stage of the proceedings to offer any opinion on whether the plaintiffs have shown a likelihood of success on the merits." Opinion at 16. To justify a preliminary injunction, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953). Of course, First City strenuously opposes its projected role as aider and abettor and any suggestion that it had knowledge of the alleged fraud or participation in it. These questions must be reserved for future factual resolution.

However, if the Bank conducted due diligence of Kinderhill prior to entering into an arrangement to finance Kinderhill limited partnerships, that due diligence should have included a review of financial statements and offering memoranda of the Kinderhill limited partnerships. This review, the Limited Partners argue, would have demonstrated continuing, extensive and material misrepresentations fraudulently inducing investments in Kinderhill limited partnerships. Although the Bank denies that it conducted a due diligence review of the Kinderhill entities prior to extending the loans, discovery is required to ascertain the merit on the Limited Partners' claims.

Even under the assumption of substantial questions, "the movant must show that the harm which he would suffer from the denial of his motion is 'decidedly' greater than the harm his opponent would suffer if the motion was granted." *Buffalo Forge Co. v. Ampco–Pittsburg Corp.,* 638 F.2d at 569. The balance of hardship fails to tip in favor of the Limited Partners, who have, after all, defaulted on the Notes that underlie the security interest.

The Limited Partners have advanced no authorities or contentions to defeat First City's rights under UCC § 9–503 and 9–504, and no real reason to bar the bank from exercising the rights bargained for under the agreement between the parties. Perhaps the restoration of the rights of the Limited Partners, if any, may be made more difficult following the auction, but that result has been caused by the Limited Partners' default.

On the other hand, First City is under some compulsion to act to resolve its outstanding claims within the terms of its agreements.

Indeed, papers submitted in connection with the proposed auction and the instant motion to enjoin it all seem devoid of any significant demonstration of hardship to either of the parties. Instead, the issue seems to be more the thrust and parry of commercial litigation. The timing of the auction and the motion to enjoin it seem to support such a conclusion.

In any case, the Limited Partners have failed to establish that the balance of hardship tips in their direction.

*Conclusion*

In the absence of irreparable injury and a balance of hardship tipping to the Limited Partners, their motion for preliminary injunction, belatedly brought, is denied in haste in order to permit a further review

should it be deemed appropriate. Under these circumstances the requested temporary restraining order is also denied.

It is so ordered.