Chief Judge Desmond.
Plaintiff corporation is in the business of selling cattle feed, farm supplies, etc. The corporate defendant Briar cliff Farms, Inc. (not a party to this appeal) raises beef cattle on several farms and beginning in 1962 was one of plaintiff’s customers. Appellants together own a majority of Briarcliff’s shares and are a majority of its board of directors. Appellant Brown is its president and appellant Peter D. Murray, an attorney, is its secretary and treasurer.
The Appellate Division, reversing Special Term, has granted plaintiff partial summary judgment against the individual defendants for the total of the following amounts, all with interest : on the first cause of action for $283,818.05, and on the second count for $443,828.93, representing amounts due on Briarcliff’s promissory notes given for merchandise sold by plaintiff to Briareliff and other good considerations payment of which appellants had individually guaranteed; and for the third cause of action for $15,000 because of nonpayment of another Briar-cliff note similarly guaranteed. These defendants opposed the granting of summary judgment, swearing (in a form and at a *60 time hereafter explained) that their $1,000,000 guarantee sued upon in this action had been fraudulently induced by plaintiff through false oral representations that plaintiff would, in addition to about $100,000 already owed by Briarcliff when the guarantees were executed, supply to Briarcliff on credit and on open account additional animal feed to a total amount of $1,000,000, the top limit of the guarantee, and would not enforce payment thereof until the total guaranteed indebtedness of Briarcliff should reach $1,000,000, all in consideration of the increase to this new $1,000,000 limit of an earlier outstanding guarantee given by appellants to plaintiff in the amount of $400,000.
Appellants’ appeal from the granting of summary judgment (a counterclaim and an item as to attorney’s fees were reserved for trial) stands solely on their sworn assertion that, as an inducement and consideration for the increase in the guarantees, plaintiff promised additional credit and forbearance but never intended to keep those promises. Special Term, after first granting summary judgment prayed for by plaintiff, ordered reargument when presented with an affidavit by appellants Brown and Peter D. Murray which contained an assertion not previously made in appellants’ answer or previously served affidavits as to plaintiff’s fraudulent oral inducement of the guarantee. After reargument at Special Term the motion was denied, appellants were permitted to amend their answers and plaintiff was granted leave to renew its application for summary judgment after such amendment. Plaintiff then appealed to the Appellate Division.
The Appellate Division unanimously reversed and granted the summary judgment. The court’s decision recited various facts, including the fact that the written agreements of guarantee were unconditional and said nothing as to the alleged representation. The court commented that “ In view of the size of the commitment, it must be considered unusually strange that the alleged representations were not included in the guarantees ”, also expressing the idea that “the fact that the notes were negotiable militates against any claim of the existence of such an important condition ”. Furthermore, the Appellate Division remarked that “ the claim of a misrepresentation was belatedly offered after the original motion for summary judgment had been submitted and that correspondence *61 between appellant Brown who was, it is alleged, present when the claimed oral representation was made and his coguarantors did not mention any such representation. (However, no such correspondence appears in the record.) The Appellate Division concluded that the defense of fraudulent inducement was “ feigned ” and that there was no triable issue as to it and no proof sufficient to raise a bona fide issue as against the unconditional terms of the guarantees themselves. The court, therefore, reversed Special Term and ordered the partial summary judgment in the total amount of about $742,000, plus interest.
The Appellate Division’s reversal was stated to be “ on the law” which necessarily means that the court held as matter of law that the opposing affidavits were inadequate to set up a triable issue of fact (Sillman v. Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 404). As the Sillman opinion put it, the ” drastic remedy ” of summary judgment should not be granted where there is any doubt as to the existence “ of [factual] issues”. It is to be noted also that the Appellate Division did not hold that the alleged fraudulent agreement to extend further credit, etc., must be denied effect because it was not in writing. Parol evidence of a fraudulent misrepresentation including a misrepresentation as to intent is admissible to avoid an agreement induced by such fraud (Sabo v. Delman, 3 N Y 2d 155, 160-161).
The question on this appeal is, therefore, the one commonly presented on motions for summary judgment: is there to be found in the papers presented on the motion a material and triable issue of fact? As we sec it, such an issue was presented here and summary judgment should not have been granted. The Appellate Division’s decision lists a number of arguments for rejecting appellants’ assertions as to an oral representation by plaintiff’s representatives. Not only are these not necessarily conclusive as to whether the representation was actually made as claimed but there are also contraindications, such as the improbability that appellants would increase their guarantees from $400,000 to $1,000,000 except on some assurance that Briar-cliff, whose debts appellants were guaranteeing up to $1,000,000, would in return for the guarantees get further credit and forbearance.
*62 Let us look more closely at the factual situation as it was when the several guarantees were signed in September and October, 1964 by appellants. Three months earlier (June, 1964), when Briarcliff’s debt to plaintiff stood at $283,818.05, Briar-cliff had given plaintiff its note in that amount and simultaneously each appellant had executed and delivered his individual guarantee up to $400,000. Briarcliff’s purchases from defendant continued and in September, 1964 it owed plaintiff $727,641.98. On September 21, 1964 a meeting was held at Briarcliff’s office in Manhattan, attended by several representatives of plaintiff including an attorney and by appellants Brown and Peter D. Murray, the latter arriving a half hour after the meeting began and after the alleged oral promise now sought to be proved had been made on behalf of plaintiff. At the meeting plaintiff asked for new guarantees to cover the more than $700,000 then owing and $300,000 more, or a total of $1,000,000. There was some discussion as to Briarcliff’s efforts to straighten out its financial affairs by getting permanent financing, and there was, apparently, an assumption or estimate that the $300,000 in new guarantees would cover Briarcliff’s future purchases in the approximately three months required to complete the proposed financing (which never was accomplished). Appellant Brown as Briarcliff’s president then executed and delivered to plaintiff’s people Briarcliff’s demand note for $443,823.93, which, when added to the note of June, 1964, for $283,818.05, equaled $727,641.98, the amount of Briarcliff’s whole indebtedness up to that date. At the same time Brown for Briar cliff executed and delivered to plaintiff a $15,000 so-called “ Line of Credit Promissory Note ” payable in 30 days. The precise reason why this separate instrument was furnished is not clear but the parties seem to agree that it covered further advances of credit. Brown’s affidavit opposing the summary judgment motion says that at the September 21 meeting and before any of the $1,000,000 guarantees were signed plaintiff’s representatives expressly represented and promised that if the new guarantees were given plaintiff would extend credit to Briarcliff up to $1,000,000 and would not press for payment until the indebtedness was at least $1,000,000. Brown swears that he then executed and delivered his new guarantee and that, when appellant Peter D. Murray arrived at the meeting place a little *63 later, he (Brown) told Murray of the promise and Murray then signed his guarantee. According to an affidavit of plaintiff’s manager Aloan, Murray agreed to obtain similar guarantees from his brother, appellant Thomas E. Murray, Jr., and from appellants Angier B. and Anthony D. Duke, all of which Peter Murray afterwards did. Peter Murray’s affidavit corroborates Brown as to the latter’s having informed Murray at the September meeting that plaintiff had made the promise. Peter Murray swore that he later passed on this information to his brother, appellant Thomas E. Murray, Jr. The two Duke defendants made affidavits in which they swore that before they signed their guarantees they were informed by Peter Murray as to plaintiff’s representation (both Angier and Anthony Duke had been away from New York at the time of the September 21 meeting). The record contains also some correspondence as to furnishing of financial statements by appellants, but this seems unimportant as to the present issue.
On October 29,1964 the $15,000 note had become due but went unpaid. Plaintiff demanded payment of the whole of Briarcliff’s account (which had meanwhile been further substantially increased) and, when they did not get it, commenced this suit on November 9, 1964. All the defendants answered on December 30,1964 but their pleading did not contain the defense of fraudulent inducement which was not asserted until June 2,1965 when, after summary judgment had been granted at Special Term, appellants moved for reargument. Plaintiff filed no affidavit denying the alleged misrepresentation and the record contains no such denial by plaintiff.
It might be considered implausible that defendants would sign unconditional million-dollar guarantees containing no mention of plaintiff’s promise, but it is not impossible. On the other side, it may not be impossible but it might be thought unlikely that appellants would increase their guarantees from $400,000 to a million dollars without some assurance that Briarcliff would be allowed to stay in business. In the face of these disputes and uncertainties the Appellate Division has granted summary judgment on the ground that the defense is not only improbable but feigned—that is, false. We cannot agree. However appropriate the summary judgment method may be for disposing without trial cases where there is no issue at all, this is not that *64 kind of case. The truth as to these matters must be arrived at in the lawful and customary way, this is, by a trial where the witnesses can be examined and cross-examined and their demeanor and their versions put under the scrutiny of the triers of the facts.
The order appealed from should be reversed, with costs in this court and in the Appellate Division, and the order of Special Term reinstated.
Judges Fuld, Van Voorhis, Burke, Scileppi, Bergan and Keating concur.
Order reversed, etc.