■ MAGI COMMUNICATIONS, INC., Respondent, v JAC-LU ASSOCIATES et al., Appellants.—Judgment, Supreme Court, New York County, entered April 28, 1978, reversed, on the law, and vacated, with $75 costs and disbursements of this appeal to appellants and the order, entered April 14, 1978, reviewed on the appeal from the judgment, reversed, on the law, and plaintiff's motion for summary judgment in lieu of complaint denied. The parties shall serve formal pleadings beginning with plaintiff's complaint to be served within 20 days after entry of the order on this appeal. Plaintiff, as assignee of Magi International, Ltd., commenced this action by motion for summary judgment in lieu of complaint pursuant to CPLR 3213, to recover the balance of $30,000 alleged to be due and owing on a promissory note in the principal amount of $155,000, delivered by defendants to plaintiff's assignor in payment for the rights to a motion picture entitled "The

Tormented." The note was delivered together with a purchase agreement between defendant Jac-Lu Associates and Magi International, and a distribution agreement between Jac-Lu and Malibu Sunset, Ltd. Following default, the note was assigned to plaintiff. Plaintiff admits that it is not a holder in due course and concedes that it is subject to all defenses which might be available against plaintiff's assignor. In opposition to the motion, defendants rely upon alleged false and fraudulent representations by plaintiff's assignor made to induce defendant Jac-Lu to enter into the aforesaid purchase agreement: (1) the motion picture was a new film which had recently been made in Italy; (2) the cost of making the picture exceeded $1,000,000; (3) the picture was available for sale at a price of $200,000 cash plus a nonrecourse note in the sum of $1,100,000, representing a net profit to plaintiff's assignor of $18,000; and (4) Magi International would secure a well-known and experienced distributor to distribute and promote the picture, supervised by plaintiff's assignor to ensure that defendants' investment would qualify as a tax shelter in the event the motion picture did not make money. Defendants allege that the representations were false in that (1) the motion picture was not a new one, but rather had been made several years ago and had been available for sale for two years; (2) the picture had previously been available for sale for $50,000 cash, not $200,000 as had been represented; (3) the cost of the film was substantially less than $1,000,000, resulting in a profit of more than $18,000 to Magi International; and (4) Magi did not secure an experienced and well-known distributor and did not follow up to assure proper distribution and promotion, but rather, interfered with distribution and promotion by advising the distributor not to show the picture nor furnish any reports to defendants. Special Term, in granting summary relief, held the alleged misrepresentations to be inadmissible under the parol evidence rule. The court, in reliance upon *Danann Realty Corp. v Harris* (5 NY2d 317) and *Seaman-Andwall Corp. v Wright Mach. Corp.* (31 AD2d 136), held the defense of fraud in the inducement to be unavailable to contradict the provision that the contract contained the entire agreement of the parties and that there were no representations or warranties except as set forth in the agreement. Those cases, however, are clearly distinguishable and do not support Special Term's disposition. In both *Danann Realty (supra)* and *Seaman-Andwall (supra)*, the contract provision contained a specific disclaimer, whereby the party disclaimed reliance upon representations on the very matter as to which he claimed he was defrauded. Under such circumstances, the parol evidence rule precludes proof of fraud to vitiate the agreement. However, where, as here, the agreement contains only a general merger clause, proof by parol may be offered to establish either fraud in the inducement or fraud in the execution. Thus, the Court of Appeals observed in *Danann Realty Corp. v Harris (supra,* p 320): "To put it another way, where the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud—either in the inducement or in the execution—despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made." Here, the agreement contained a broad and general merger clause, providing: "This Agreement contains the entire agreement of the parties hereto with respect to the subject matter herein contained and there are no representations or warranties, except set forth herein." Such a clause, however, is clearly ineffectual to preclude oral proof of false or fraudulent misrepresentations offered to rescind the agreement *(Sabo v Delman,* 3 NY2d 155; *Bridger v Goldsmith,* 143 NY 424). Moreover, in *Seaman-Andwall (supra),* this court rejected as legally insufficient the

evidentiary proof tendered in opposition to the motion, finding that the affidavit of the attorney, who lacked requisite knowledge of the facts, was without probative value. Here, defendants submitted the affidavit of Continental's president, who was intimately involved in the transaction between Jac-Lu and Magi International, and who was present when the alleged misrepresentations were made. The opposing affidavit is sufficient to raise genuine triable issues as to the alleged fraudulent representations by plaintiff's assignor. Proof of such fraud in the inducement would be admissible as a defense against plaintiff, who admittedly is not a holder in due course. At issue also are defendants' factual allegations of breach of contract which Special Term held to be of such minor importance as to be insufficient to justify defendants' refusal to honor their note. Issue determination is not the function of summary judgment. (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Esteve v Abad,* 271 App Div 725.) Materiality of a breach is for trial. Special Term's failure to take cognizance of the proof offered in opposition to the motion was error and requires vacatur of the order which summarily disposed of the action. Concur—Lupiano, Fein, and Sullivan, JJ.; Kupferman, J. P., dissents in a memorandum as follows: I dissent and would affirm. Summary judgment was clearly warranted here. The opinion of the majority fairly states the facts, but by lack of analysis of the field involved completely loses sight of the significant details. We have here a purchase of rights in a motion picture for $155,000 on a promissory note, of which some $30,000 still due is the subject of this action. In addition, there was a nonrecourse note in the sum of $1,100,000. This is the classic tax shelter arrangement which was outlawed by the Tax Reform Act of 1976. Under the new law, the amounts of loss that can be claimed in the motion picture field are only those based on "at risk" situations, meaning that there has to be a risk in the activity in order to claim a deduction. A nonrecourse note would not qualify. (See, 1977 CCH US Master Tax Guide §§ 353, 373.) Previously, nonrecourse financing would permit a deduction, which in this case would give to the purchasers greater benefits through a tax shelter than the amount of the assets actually at risk. (See, Madden, Tax Shelters—An Endangered Species, 58 Chicago Bar Record 132, 134.) The Commissioner of Internal Revenue in "Commissioner's Remarks on Abusive Tax Shelter Issues" by Jerome Kurtz (55 Tax Magazine 774, 777) discusses this and the fact that without any real risk of loss, substantial tax deductions were being obtained under the old law. The new law has in the motion picture field set limits on artificial losses (Jacobovitz, Tax Shelters, Trial Magazine, vol 12, No. 2, pp 58, 66.) Having set the matter in proper perspective, it can be seen that the purpose of the arrangement in this case was simply to generate tax losses. What is more and is really conclusive in this matter is the fact that earnings would have been detrimental to the purchasers. As was stated by Boris I. Bittker in his note entitled Tax Shelters, Nonrecourse Debt and the Crane* Case (33 Tax Law Review 277, 283), deductions taken in earlier years are or should be recaptured at the end of the road. Accordingly, the court at Special Term was quite correct in stating that the allegations of breach of contract make by the defendants were of such "minor importance" as to be insufficient to justify the defendants' refusal to honor their note. If the defendants would achieve success with the film, they would then have income on which they would have to pay taxes with no deductions against it, the deductions in an excessive amount having previously been taken. Such a result would be contrary to

---

* *Crane v Commissioner of Internal Revenue* (331 US 1).

the very purpose of the motion picture tax shelter arrangement. Undoubtedly, the defendants have already received tax benefits in an amount in excess of the "recourse" note upon which they are being sued. To be permitted to postpone payment thereon until a trial is to provide judicial shelter in an area where tax shelters no longer apply.