■ THOMAS EPSTEIN, as Executor of EMANUEL Z. EPSTEIN, Deceased, Appellant, v JEROME T. SCALLY, Respondent. — Order, Supreme Court, New York County (Edward J. Greenfield, J.), filed on March 1, 1983, which denied plaintiff's motion for summary judgment in lieu of a complaint and directed

the service of a formal complaint, is affirmed, with costs. Those facts of this case which are uncontested by the parties are fairly stated in the dissent. However, the facts that are at the heart of this dispute are sharply disputed by the parties and thus require a trial, as Special Term correctly held. Defendant has asserted that he was fraudulently induced to execute the promissory note and contract of sale for the purchase of plaintiff's deceased brother's medical practice. He claims that plaintiff made oral representations that the medical practice was comprised of 891 *active* patients and underscored that representation with the assurance that he was familiar with his brother's practice and was certain the numbers would bear out. Defendant asserts that when he questioned the accuracy of the representation that there were 891 *active* patients, he was refused access to the patient charts and patient cards. Based upon his experience as a practicing doctor and taking into account the representations made, defendant calculated that 20%, or approximately 180, of the active patients were chronic patients and would require treatment approximately once every two months. He determined that the 90 chronic patient visits per month together with "regular" patient visits would translate into 25 patient visits per week. However, it developed that he saw no more than 10 patients a week. Defendant counted the patient cards received from plaintiff and found only 752, approximately 16% fewer than the number represented by plaintiff. He wrote to each of the 752 patients on file. Some 40% of these letters were returned as undeliverable. Various reasons for the drop-off are asserted, including the fact that some patients had moved from the address on file and left no forwarding address, and some were dead, one apparently for some three years. Thus, defendant claims that plaintiff's representations as to the number of *active* patients, upon which he relied, was false and that he was fraudulently induced thereby to enter into the transaction. He claims to have been misled by these representations into believing the practice was more valuable than it in fact was. While plaintiff denies having made any representations, he relies primarily upon the assertion that defendant is barred from claiming any reliance on any representation because of the contract of sale provision which recites that defendant had examined all the property sold (including all records of patients and furniture, furnishings and equipment), and accepted the same "as is", a position adopted by the dissent. We disagree and at the outset, remark again that summary judgment is a drastic remedy, the procedural equivalent of a trial (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 404), and should not be granted where triable issues of fact are raised that cannot be resolved on conflicting affidavits. Issue finding, not issue determination, is the appropriate function of summary judgment (*Magi Communications v Jac-Lu Assoc.,* 65 AD2d 727; *Schoolsky v Dalvin,* 51 AD2d 1026). If in fact made, as claimed by defendant, plaintiff's alleged representation that there were 891 *active* patients of the practice would be a substantial and material representation as to an existing fact and would bear directly upon the value of the practice. This allegation, in our view, sufficiently raises issues of fact to warrant a trial. The dissent's reliance on the "as is" clause in the agreement as establishing irrefutably that no such representation was made is misplaced. Whether the language of the disclaimer is "sufficiently explicit as to subject matter", as to warrant the conclusion that it was meant to refer to the number of patient cards, is subject to question. Nevertheless the critical factor in respect to the representation is not alone that the number of patients was 16% less than the 891 claimed, but that some 40% of the 752 patients apparently were not *active* patients. Thus the practice was of a significantly lesser value, a fact that may have not been apparent from an examination of the patient cards. Moreover, an "as is" disclaimer more generally relates to the physical condition of identified goods in a sales

contract rather than the inherent worth or value of the goods. (*Pete's Corner v E-Miljud, Inc.,* 84 AD2d 761.) In *Pete's Corner* (*supra*), plaintiff sought to recover damages for fraud based on defendant's misrepresentation as to the value of a business inventory under a contract in which plaintiff specifically stated that it had inspected the inventory, was familiar with it and its condition, and was taking it "as is". The court held that although the provisions of the contract "would be adequate to bar plaintiff from bringing this action were it contesting either quantity or quality of the inventory, the same cannot be said where the action is one seeking damages for fraudulent representations as to value." The fact that defendant may have examined and accepted the medical records "as is", if that is indeed the fact, does not preclude evidence of a misrepresentation as to the value of the practice. It is the number of *active* patients, i.e., those who regularly patronize the medical practice, that gives evidence of the value of the practice. Concur — Sandler, J. P., Ross, Asch and Alexander, JJ.

Sullivan, J., dissents in a memorandum as follows: In denying plaintiff's motion for summary judgment in lieu of a complaint on a $16,000 promissory note, Special Term found that defendant's claim of fraud in the inducement presented an issue of fact. I disagree and would grant plaintiff summary judgment. Defendant, a doctor, purchased the medical practice of Emanuel Z. Epstein, the deceased, from plaintiff, the executor of his estate, for $24,000, of which $8,000 was paid on September 16, 1982, the date of sale, with the balance of $16,000, as evidenced by a note in that amount executed by defendant in plaintiff's favor, payable in 12 equal monthly installments commencing October 15, 1982. As part of the sale the deceased's medical office was sublet to defendant for the balance of the lease term. Defendant failed and refused to make any payments on the note, including the monthly payment due on October 15, 1982, as a result of which, payment of the entire debt was accelerated. After having defaulted in payment of the rent due October 1, 1982 — his first month's rent check had been twice returned for insufficient funds — defendant vacated the deceased's office on November 5, 1982, just one month after he began practicing there. He took with him all of the deceased's patient records, office furniture, furnishings and equipment. In a notice sent to the deceased's patients defendant announced that he and "Simone" (the deceased's nurse) were moving to his "larger and better equipped" downtown office. At the time defendant was maintaining two other offices besides the deceased's. In opposing the motion defendant alleges that plaintiff falsely and materially misrepresented that the deceased's practice consisted of 891 active patients whereas the deceased's files revealed only 752 patient cards, which is 129 or 16% less than what plaintiff had represented. Defendant alleges that when questioned about the 891 patients, plaintiff refused to show him the medical records. Plaintiff denies making any such representation and alleges that defendant made several inspections of the deceased's office, including an examination of the patients' records, and accepted all of the property sold "as is". The purchase agreement between plaintiff and defendant contained the following provision: "WHEREAS, the Seller desires to sell and the Purchaser desires to purchase the medical practice and records of patients of Dr. Epstein and the furniture, furnishings and equipment herein-below described * * * The Seller hereby sells and the Purchaser hereby purchases Dr. Epstein's medical practice, including all records of patients and the furniture, furnishings and equipment in Seller's office * * * Purchaser has examined all of said property hereby sold and accepts same 'as is.' " The only items expressly excluded from the sale were any moneys due the deceased for services rendered by him and the deceased's consultation room desk and chair, as well as a table and three screens in the same room. Defendant's entire defense is premised upon the

claim that plaintiff falsely represented that the deceased's practice consisted of 891 active patients. It should be noted that the claim of fraudulent inducement was never asserted until after the note was accelerated. More importantly, however, in the purchase agreement defendant, who had consulted an attorney before signing the agreement, acknowledged that he "examined all of said property hereby sold" and that he accepted the same " 'as is.' " Immediately preceding this acknowledgment was a description of the property sold which included "all records of patients". The "WHEREAS" clause also specifically recited that patients' records were one of the subjects of conveyance. Having acknowledged in the purchase agreement that he examined the patients' records defendant cannot now be heard to complain that he did not. The language of the "as is" disclaimer in the parties' purchase agreement is sufficiently explicit as to subject matter, i.e., "medical practice, including all records of patients", as to destroy the allegation that the agreement was executed in reliance upon any representation which plaintiff might have made as to the quantity or quality of the patient record inventory being sold. (See *Danann Realty Corp. v Harris,* 5 NY2d 317; cf. *Pete's Corner v E-Miljud, Inc.,* 84 AD2d 761.) While, ordinarily, the parol evidence rule does not bar extrinsic evidence of a seller's alleged fraudulent representations (see *Bridger v Goldsmith,* 143 NY 424; *Angerosa v White Co.,* 248 App Div 425, affd 275 NY 524; *Jackson v State of New York,* 210 App Div 115, affd 241 NY 563), where a party in the plainest language makes a representation that he has examined the very matter as to which he now claims he was defrauded and acknowledges that he is accepting the same "as is", he will not be heard to complain that he was induced to enter into the transaction by misrepresentations. (*Danann Realty Corp. v Harris,* 5 NY2d 317, *supra.*) Finally, it should be noted that defendant's claim of fraudulent inducement is premised on his assertion that he was refused access to the deceased's medical records. Yet, in the purchase agreement he stated that he had examined the records. In such circumstances, to countenance defendant's claim of fraudulent inducement would be tantamount to condoning his own misrepresentation that he had examined the deceased's medical records. The defense of fraudulent misrepresentation is an obvious contrivance which presents no bona fide issue of fact and is designed solely to defeat the motion for summary judgment.