Russell THORNOCK, et al., Plaintiffs,

v.

KINDERHILL CORPORATION, et al., Defendants.

FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

Donald J. RATKOWSKI, Defendant.

FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

Andre DAWSON and Vanessa Dawson, Defendants.

FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

Scott D. SANDERSON and Cathleen C. Sanderson a/k/a Cathy Sanderson, Defendants.

FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

Richard M. MOSS and Carol E. Freis, Defendants.

FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

Rik Aalbert BLYLEVEN and Patricia Ann Blyleven, Defendants.

FIRST CITY NATIONAL BANK AND TRUST COMPANY, Plaintiff,

v.

DWP INVESTMENT LIMITED PARTNERSHIP and David W. Palmer, Defendants.

Nos. 88 Civ. 3978(RWS), 88 Civ. 6154(RWS) to 88 Civ. 6156(RWS), 88 Civ. 6978(RWS), 88 Civ. 7020(RWS) and 88 Civ. 7547(RWS).

United States District Court, S.D. New York.

Oct. 19, 1990.

Ross & Hardies (Peter I. Livingston, Michelle J. d'Arcambal, of counsel), New York City, for First City Nat. Bank and Trust Co.

Beigel & Sandler, Ltd., New York City (Lewis S. Sandler, of counsel, Chicago, Ill.), for movants, plaintiffs in Thornock and defendants in related cases.

## OPINION

SWEET, District Judge.

First City National Bank and Trust Company ("FCNB" or "the Bank"), a defendant in *Thornock v. Kinderhill Corp.*, 87 Civ. 7737 ("*Thornock*") and a plaintiff in the six cases, *First City National Bank and Trust Co. v. Ratkowski*, 88 Civ. 6154, *First City National Bank and Trust Co. v. Dawson*, 88 Civ. 6155, *First City National Bank and Trust Co. v. Sanderson*, 88 Civ.

6156, *First City National Bank and Trust Co. v. Moss,* 88 Civ. 6978, *First City National Bank and Trust Co. v. Blyleven,* 88 Civ. 7020, and *First City National Bank and Trust Co. v. DWP Investment Limited Partnership,* 88 Civ. 7547 (collectively, "the FCNB actions"), has moved to dismiss the Second Amended Complaint in *Thornock.* The defendants in the FCNB actions have moved to vacate the default summary judgments entered in favor of FCNB in each of those cases. For the reasons stated below, the motion to dismiss in *Thornock* is granted, and the motions to vacate the summary judgments are denied.

*The Parties*

The plaintiffs in *Thornock* are individual investors in various limited partnerships which were involved in the business of buying, breeding and selling thoroughbred racehorses. In both this case and *Bruce v. Martin,* 87 Civ. 7737, the investors have sued those who organized, promoted, and managed the partnerships, alleging securities fraud and other misdeeds. The numerous parties and their claims are described in further detail in earlier opinions in both cases. *See, e.g., Bruce v. Martin,* 712 F.Supp. 442 (S.D.N.Y.1989); *Thornock v. Kinderhill Corp.,* 712 F.Supp. 1123 (S.D.N.Y.1989).

FCNB provided financing to some of the *Thornock* plaintiffs for the Kinderhill investments, in exchange for the borrowers' promissory notes ("the Notes"). The claims against FCNB in *Thornock* are based on allegations that the Bank was an aider and abettor in the primary securities violations. In the FCNB actions, the borrowers seek to defend against enforcement of the Notes based on FCNB's alleged fraudulent inducement of the investments.[1]

*Prior Proceedings*

A complete description of the events and activities which led up to this litigation is set forth in the May 22, 1989 Opinion, 712 F.Supp. 1123 (S.D.N.Y.1989). In the original *Thornock* complaint, filed on June 8, 1988, FCNB was not named as a defendant. On July 9, 1988, the Bank sued seven individual borrowers, six of whom were already plaintiffs in *Thornock,* in New York state court to enforce the Notes. Six of these seven actions were subsequently removed to federal court and consolidated.[2] In October, 1988, the investors filed an amended complaint in *Thornock* in which FCNB was added as a defendant.

The Bank moved to dismiss the amended complaint, and the motion was granted with the investors given leave to refile. Following the filing of the Second Amended Complaint in May, 1989, FCNB again moved to dismiss, and also for summary judgment in the FCNB actions. On June 9, 1989, the investors' law firm sought to withdraw from all representation in both *Thornock* and the FCNB actions because of a conflict of interest. Because of the delay and confusion caused by the change of counsel, the investors and borrowers failed to respond to any of FCNB's pending motions, and default judgments were entered in the Bank's favor on the summary judgment motions on July 10 and on the motion to dismiss on July 17, 1989.

One month later, the investors moved to vacate the default judgments on the grounds of excusable neglect. In January, 1990, the motion to set aside the judgment of dismissal in *Thornock* was granted, but the motions to vacate the default summary judgments in the FCNB actions were denied, because "no sufficient showing of merit ha[d] yet been made in opposition to the summary judgment motions" in those cases. *Thornock v. Kinderhill Corp.,* 88 Civ. 3978, slip op. at 7, 1990 WL 3924 (S.D.N.Y. January 12, 1990). The borrowers were, however, granted leave to submit

---

1. For clarity, the *Thornock* plaintiffs will be referred to as "the investors," and those investors who are also defendants in the FCNB actions will be referred to as "the borrowers."

2. The seventh case, *First City National Bank and Trust Co. v. Heaton,* was not removed because there was no diversity jurisdiction. In that case,

a motion by FCNB for summary judgment was granted. *First City National Bank and Trust Co. v. Heaton,* No. 19366/88 (N.Y.Sup.Ct. April 27, 1989). The decision was subsequently affirmed by the Appellate Division, First Department, in an unpublished opinion entered September 11, 1990.

further papers on their motions in the FCNB actions. Following another round of briefing, the (reopened) motion to dismiss and the motions to vacate the default summary judgments were argued on June 22, 1990. Subsequent to this argument, both sides submitted further material relating to the New York state court activity in the single collection action which had not been removed.

## I. The Motion To Dismiss

### A. *The Standard*

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Thornock,* 712 F.Supp. at 1127 (S.D.N.Y.1989). The complaint's allegations must be construed in the light most favorable to the plaintiff and accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

### B. *Analysis*

■ As explained more fully in the April, 1989 opinion granting FCNB's first motion to dismiss, the test in this circuit for a claim of aiding and abetting a securities violation is that described in *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980) (Friendly, J.). This test requires that the plaintiff show: (1) a securities violation by the primary offender; (2) knowledge by the alleged aider and abettor of the underlying violation; and (3) substantial assistance by the aider and abettor in achieving the underlying violation. *IIT,* 619 F.2d at 922.

■ In the April 1989 opinion, the investors' (first) amended complaint was found to satisfy the first two prongs of the *IIT* test for aider and abettor liability, but was dismissed because it did not adequately allege "substantial assistance" by FCNB in the underlying securities violation. *Thor-*

*nock v. Kinderhill Corp.,* 88 Civ. 3978 slip op at 5–6, 1989 WL 40079 (S.D.N.Y. April 13, 1989). In their Second Amended Complaint, the investors have responded to this criticism by adding one new paragraph:

32. First City National Bank rendered substantial assistance to the fraudulent conduct by the Kinderhill Defendants by providing funds to the Broodmare Limited Partnership in return for which the Bank received, as direct payee, promissory notes from each of the limited partners in the Broodmare limited partnership.

Unfortunately for the investors, the mere recitation of the words "substantial assistance" does not suffice to elevate FCNB's activities to the level necessary to uphold the claim.

■ In the simplest case, "substantial assistance" exists where the alleged aider and abettor has played an active role in furthering the securities violation. However, FCNB's alleged behavior does not qualify as active assistance. Although the Bank's provision of financing may have been a but-for cause of the investors' losses—without financing they would never have invested in the Kinderhill partnerships—it was not the proximate cause. Faced with a similar allegation of substantial assistance, the Second Circuit remarked

We question whether [defendant's] acts "caused" the loss of [plaintiff] in a proximate sense, since that loss was "caused" not by [defendant's] short selling but by the failure of [defendant] to inform [plaintiff] that it was selling short for its own account.

*Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). Likewise, the investors' losses here were caused not by FCNB's provision of financing, but rather by the Kinderhill defendants' alleged mismanagement of the investments.

■ Because the Bank cannot be said to have actively assisted the alleged fraud, the investors must, in order to state a claim, succeed in showing substantial as-

sistance by inaction, namely the Bank's nondisclosure of information concerning the risks of the investments and the misrepresentations made to the investors. Such assistance was alleged in *National Union Fire Insurance Co. v. Turtur*, 892 F.2d 199 (2d Cir.1989), where the court explained that there are only two situations in which a refusal to act can rise to the level of substantial assistance required by *IIT*. The first is when the alleged aider and abettor has a pre-existing duty to act, such as where a fiduciary relationship exists, while the second is where the third party has a "conscious and specific motivation for not acting." *Turtur*, 892 F.2d at 207 (citing *IIT*, 619 F.2d at 927). With regard to the latter situation, the court cautioned that something more than an ordinary business purpose was required:

> If we were to extend that exception to [defendant], whose sole apparent motive was to collect the premium for its Guarantee, the exception would swallow the rule, since *almost any entity playing a role in a securities transaction will have some economic motivation for doing so*. Rather, as we stated more recently in *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983), inaction can provide a basis for liability, in the absence of a duty to act, only when *"designed intentionally to aid the primary fraud."*

892 F.2d at 207 (emphasis added).

■ In the present case, the investors have not alleged that they had any relationship with FCNB which would have created a duty for the Bank to disclose information concerning the Kinderhill investments.[3] The investors therefore must establish that

FCNB's inaction was due not to its ordinary economic interest in providing financing, but rather was the result of "a conscious and specific motivation" and was "designed intentionally to aid the primary fraud." This the complaint fails to do.

■ Paragraph 32 alleges no more than that the Bank provided funds in exchange for the investors' notes, an entirely routine transaction. The investors, however, argue that FCNB's participation was anything but routine, asserting that

> FCNB has a special stake in the investment, because it is alleged to have provided package financing to all of the limited partners in Kinderhill Farm Broodmare Leasing Program I, L.P. ... It knowingly financed a limited partnership which was engaging in ponzi transactions.

Movants' Reply Brief at 8. Unfortunately, even this allegation does not constitute a special motive for the Bank's behavior: there is still no claim that FCNB stood to gain anything on the transactions other than the normal profit which it would make on the loans. Grouping all of the individual loans together and arguing that FCNB provided them as part of a scheme to fund the entire program cannot transform this ordinary economic motivation into the "specific motivation" "designed intentionally to aid the primary fraud" which *Turtur* requires.[4]

In summary, the investors have not alleged facts necessary to support a claim that FCNB aided and abetted the alleged underlying securities fraud here, and there-

---

**3.** In connection with their motion to vacate the summary judgments in the FCNB actions, the investor-borrowers assert that defendant Kinderhill Corp. acted as FCNB's agent in arranging the financing for the investors, and therefore FCNB is charged with Kinderhill's knowledge of the underlying fraud. Such a claim, if substantiated, might also form a basis from which to impute to FCNB Kinderhill's duty of disclosure. However, a necessary element of such an agency relationship would be FCNB's control over Kinderhill, and the investors have not alleged such control. Thus there is no basis for finding that FCNB had any preexisting duty to disclose

its knowledge, whatever that may have been, to any of the investors.

**4.** The investors rely on *White v. ITC Corp.*, Fed. Sec.L.Rep. (CCH) ¶ 93,105, 1986 WL 15447 (D.C. Or.1986) to support their claims that FCNB's actions constituted substantial assistance. In fact, a comparison between *White* and the present case highlights the inadequacy here. In *White*, the lender's provision of financing benefited not only the lender itself, but also its subsidiary, which had the exclusive right to sell equipment to the limited partnership which was funded by the loans.

fore the claims against FCNB in the Second Amended Complaint will be dismissed.[5]

## II. The Motions to Vacate the Default Summary Judgments

### A. *Standard for a Motion to Vacate*

The standards for a motion under Rules 55(c) and 60(b), Fed.R.Civ.P., to set aside a default judgment are set forth in the January opinion, *Thornock v. Kinderhill,* 88 Civ. 3978, slip op. at 5–7 (S.D.N.Y. Jan. 12, 1990). As explained more fully in that decision, the borrowers have established "excusable neglect" sufficient to justify setting aside the default judgments in the FCNB actions, and have adequately shown that such disposition would not substantially prejudice any of the parties. *Id.* at 5–6. The primary reason for denying the earlier motion was that

> no sufficient showing of merit has yet been made in opposition to the summary judgment motions made in the [FCNB] actions. Movants' mere assertion, unsupported by affidavit of merit or other evidence, that there exist issues of fact as to whether FCNB had knowledge of fraud and therefore is not a holder in due course of the movants' notes, does not establish a meritorious defense.

*Id.* at 7 (citation omitted). Although the investors have now remedied the evidentiary deficiency, the new evidence presented does not support the existence of a defense to the enforcement of the notes.

### B. *Analysis*

■ In their supplemental papers in support of the motion to vacate, the investors have presented the affidavit of Gerald Henderson ("Henderson"), an accountant and financial consultant who advised some of the investors, and of Marilyn Neiman ("Neiman"), an attorney for the investors. Henderson asserts that FCNB was a knowing participant in the "fraudulent inducement of investments in Broodmare and related [investments]," and that the fraudulent inducement was accomplished by means of misrepresentations and material omissions in the various offering memoranda. The investors assert that, because FCNB had knowledge of the fraud it can never be a holder in due course of the Notes, and that therefore the defense of fraudulent inducement can defeat the Bank's attempt to enforce the Notes. *See* N.Y.U.C.C. §§ 3–302, 3–304, 3–305.

However, the borrowers have not alleged, nor have they presented any evidence, that the loans themselves were fraudulently induced. Rather, they contend that they were fraudulently induced to invest the proceeds of the loans in the Kinderhill partnerships. As a matter of law, this contention is insufficient to establish a defense to enforcement of the Notes, regardless of whether FCNB had knowledge of the circumstances surrounding the investment.

#### 1. Fraudulent Inducement

■ Under New York law, fraudulent inducement is a valid defense to an action by the holder of a negotiable instrument to enforce the instrument. *Pan Atlantic Group, Inc. v. Isacsen,* 114 A.D.2d 1022, 495 N.Y.S.2d 458 (2d Dep't 1985); *Magi Communications, Inc. v. Jac–Lu Associates,* 65 A.D.2d 727, 410 N.Y.S.2d 297 (1st Dep't 1978). If the holder is not a holder in due course, the defense may be valid even if the fraud was committed by a third party. However, those New York cases which hold that fraud by a third party is a defense are limited to situations where the third party was at some time the holder or owner of the instrument. *Id.* In addition, in order for fraudulent inducement to prevent enforcement of a promissory note, it generally must be based on misrepresentations concerning the terms or conditions of the loan itself. *See, e.g., Hunt v. Bankers Trust Co.,* 689 F.Supp. 666, 673–74 (N.D.Tex.1987) (applying New York law, fraudulent inducement was adequately alleged by affidavits that lender promised to revise repayment schedules if necessary); *Millerton Agway Coop., Inc. v. Briarcliff Farms, Inc.,* 17 N.Y.2d 57,

---

**5.** Of course, because of this disposition the common law fraud claims against the bank will also be dismissed for lack of pendent jurisdiction.

268 N.Y.S.2d 18, 215 N.E.2d 341 (1966) (fraudulent inducement adequately alleged by affidavits that lender promised to extend further credit and not to press for payment).

 Here, the borrowers have not set forth any evidence which would indicate that they were in any way misled about the FCNB loans themselves. Whether or not they were given a truthful picture of the soundness of their investments in the Kinderhill partnerships, they have not alleged any lack of awareness that the Notes would have to be repaid according to their terms. In light of this deficiency, the borrowers' assertions that FCNB knew of the Kinderhill promoters' misrepresentations and that its relationship with the promoters was closer than "a traditional individual lender/borrower relationship" (Borrowers' Statement Pursuant to Rule 3(g) ¶ 3) are simply insufficient to establish a triable issue on the defense of fraudulent inducement of the Notes.

### 2. Waiver

 The Bank also argues that even if the borrowers had presented evidence to support their fraud defense, all claims against the Bank have been explicitly waived. In New York, a waiver will overcome a defense to enforcement of a promissory note provided that the waiver explicitly addresses the defense in question and that it was knowingly entered into by the promisor. *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 94–95, 495 N.Y.S.2d 309, 311, 485 N.E.2d 974, 976 (1985); *First City National Bank and Trust Co. v. Tobias*, 156 A.D.2d 267, 548 N.Y.S.2d 655 (1st Dep't 1989); *Seaman–Andwall Corp. v. Wright Mach. Corp.*, 31 A.D.2d 136, 295 N.Y.S.2d 752 (1st Dep't 1968), *aff'd*, 29 N.Y.2d 617, 324 N.Y.S.2d 410, 273 N.E.2d 138 (1971).

 In the instant case, each borrower requested the loan from the Bank by signing a two-page "Borrower's Letter," consisting of six paragraphs. The lengthiest paragraph, occupying most of the second page, read:

*Investment Knowledge*

I acknowledge and fully understand that the Bank is acting solely as a lender and not as an investment advisor. The Bank has made no attempt to analyze or evaluate my intended investment in the Partnership. *The Bank has made no representations to me, express or implied, to induce me to request this loan.* The bank has given no opinion or advice as to whether it is wise or prudent for me to invest funds in the Partnership. The Bank has made no representations concerning the Partnership, its General Partner(s) or their financial strength, prospects, or integrity. I have made my investment decision based on such independent investigation as I have deemed necessary. *I understand that the Bank has not participated in the preparation of a Private Placement or Offering memorandum or similar document for the Partnership and therefore is not responsible for any statement contained in or the completeness of such document.* I assume all responsibility for keeping myself informed of the financial condition and operation of the Partnership and agree that the Bank shall have no duty to advise me of any such information. *I agree to hold the Bank harmless and do hereby release the Bank from any and all claims that I may have relating to or arising out of my investment.*

(emphasis added). It seems clear that the highlighted sentences constitute an explicit waiver of any claim that the loans were fraudulently induced. Furthermore, the borrowers do not allege either that they did not read this paragraph or that they did not understand its implications when they signed the letters. Therefore, under New York state law, the waiver is valid and the borrowers claims of fraudulent inducement must fail.[6]

### 3. The Need for Further Discovery

Finally, the borrowers—in a tacit admission of the weakness of the evidence sup-

---

**6.** In *First City National Bank and Trust Co v. Heaton,* discussed in n. 2 *supra,* the New York state court held that the same paragraph in the

Borrower's Letter in that case constituted a waiver of the defense of fraudulent inducement. The Appellate Division agreed. Although the

**520**

porting their allegations—rely on Neiman's affidavit to justify setting aside the default judgments here because of their inability to obtain discovery from FCNB. However, as explained in the preceding sections, the problems the borrowers face are not due to any failure to support their allegations adequately. The allegations themselves—supported or not—are simply not sufficient to constitute a defense to enforcement of the Notes. More precisely, the borrowers have not alleged any misrepresentations concerning the terms or conditions of the loans, nor have they suggested how the alleged fraud of the Kinderhill defendants caused them to sign the Notes, as opposed to causing them to invest the proceeds of the Notes in the Kinderhill partnerships. Furthermore, the borrowers have not set forth any facts which would negate the explicit waiver of their defense against the Bank. Because much of the evidence which would support these allegations—such as that relating to the borrowers' understanding of the waivers—is *not* solely within the control or possession of FCNB, vacating the default judgments here to allow the borrowers more opportunity for discovery is not appropriate.

*Conclusion*

Because the Second Amended Complaint in *Thornock* does not state a claim against FCNB for aiding and abetting a securities violation, the complaint will be dismissed as to the Bank. In the FCNB actions, the borrowers have failed to demonstrate the existence of a meritorious defense to the Bank's motion for summary judgment, and therefore the default judgments entered in FCNB's favor on July 10, 1989 will not be set aside.

It is so ordered.

borrowers here have tried to distinguish this result by claiming that the factual record in that proceeding was somehow different from the record here, they have not supported this claim by indicating which evidence available here was not also available to the state court. *See also First City National Bank and Trust Co. v. Tobias,* 156 A.D.2d 267, 548 N.Y.S.2d 655 (1st Dep't 1989) (fraudulent inducement defense waived by similar statement in Borrower's Letter).